# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN AARON B.,[1] <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 2:18-cv-01297-AFM <br><br> **MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF COMMISSIONER** |

Plaintiff Jordan Aaron B. filed this action seeking review of the Commissioner's final decision denying his application for supplemental security income. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. The matter is now ready for decision.

## BACKGROUND

Plaintiff applied for supplemental security income, alleging disability

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

beginning June 2009. His application was denied. (Administrative Record ["AR"] 78-96.) A hearing took place on June 10, 2016 before an Administrative Law Judge ("ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. (AR 40-78.)

In a decision dated August 26, 2016, the ALJ found that Plaintiff suffered from the following severe impairments: neuropathies, arthritis, chronic pain syndrome, depression, and anxiety. (AR 23.) The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light exertional work with the following mental restrictions: Plaintiff is limited to performing simple, routine, and repetitive tasks, making simple work decisions, and only occasional interaction with supervisors, and incidental contact with coworkers and the public. (AR 25.) Relying upon the testimony of the VE, the ALJ found that Plaintiff was capable of performing work existing in significant numbers in the national economy. (AR 31-32.) Accordingly, the ALJ determined that Plaintiff was not disabled. (AR 32.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 5-10), rendering the ALJ's decision the final decision of the Commissioner.

**DISPUTED ISSUES**

1. Whether the ALJ properly evaluated Plaintiff's subjective complaints.

2. Whether the ALJ properly determined Plaintiff's RFC.

3. Whether the ALJ erred in relying on the testimony of the VE.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

**1. Whether the ALJ properly evaluated Plaintiff's subjective complaints**

Plaintiff contends that the ALJ failed to properly evaluate his symptoms and limitations. (ECF No. 21 at 3-7.)

**a. Plaintiff's Subjective Complaints**

As the ALJ noted, Plaintiff alleged disability due to neuropathy, chronic nerve and muscle pain, depression, anxiety, insomnia, and attention deficit hyperactivity disorder. (AR 26, 180.) At the hearing, Plaintiff testified that his physical impairments result in pain while sitting, standing, and walking. In particular, Plaintiff complained of pain in his feet, ankles, hips, pelvis, and back. (AR 51, 63.) He testified that he was in "so much pain that it hurts to sit for more than a few minutes at a time or to stand or walk." (AR 51, 68.) Plaintiff further testified that his pain creates trouble sleeping which results in his concentration being "limited." (AR 52.) The pain limits Plaintiff's ability to drive, walk, or ride a bicycle, making it difficult to "get places." (AR 52, 58, 68.) Plaintiff estimated that he could walk between a half a block and two blocks before needing to stop. (AR 55.) Regarding his mental impairments, Plaintiff testified that he had seen Frederick Stampler, Psy.D., but discontinued because Dr. Stampler said he had done all he could for Plaintiff. Plaintiff testified that he continued to see Ken Waldman, M.D.,[2] every week for his psychological

---

[2] The record does not include any evidence from Ken Waldman, M.D. It may be that Plaintiff meant to refer to Peter J. Weingold, M.D., his treating psychiatrist from October 2008 to April 2012. (AR 296-308.)

3

issues. He had stopped taking medication for his mental health impairments because it was not benefiting him. (AR 53-54.)

### b. Relevant Law

Where, as here, a claimant has presented evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which those symptoms limit his or her ability to perform work-related activities. SSR 16-3p, 2016 WL 1119029, at *4.[3] Absent a finding that the claimant is malingering, an ALJ must provide specific, clear and convincing reasons before rejecting a claimant's testimony about the severity of his symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (citing *Garrison v. Colvin*, 759 F.3d 995, 1014-1015 (9th Cir. 2014)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991) (en banc)).

Factors an ALJ may consider when making such a determination include the objective medical evidence, the claimant's treatment history, the claimant's daily

---

[3] Social Security Ruling 16-3p, which became effective March 28, 2016 applies to this case. SSR 16-3p rescinded and superseded the Commissioner's prior rulings as to how the Commissioner will evaluate a claimant's statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims. *See* SSR 16-3p, 2017 WL 5180304, at *1. The Ninth Circuit has found the changes in SSR 16-3p to be largely stylistic and held that SSR 16-3p is consistent in substance with Ninth Circuit precedent that existed before the effective date. *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017). Accordingly, the Court relies upon Ninth Circuit authority governing the proper method for assessing a claimant's credibility.

4

activities, an unexplained failure to pursue or follow treatment, and inconsistencies in testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).

### c. Analysis

The ALJ provided several reasons for discounting Plaintiff's subjective complaints. To begin with, the ALJ concluded that Plaintiff's statements were inconsistent with the medical evidence. (AR 29-30.) Prior to reaching this conclusion, the ALJ summarized the medical record.

The ALJ began by observing that the record contained objective evidence of "the diagnosis and treatment neuropathies, chronic pain syndrome, and arthritis." (AR 26.) The ALJ noted that in June 2009, Plaintiff underwent an operation to address his left piriformis syndrome and sciatic nerve entrapment. (AR 213-214.) In September 2009, Plaintiff underwent a similar operation to address his right side. (AR 215-216.) Plaintiff reported only temporary relief and an MRI revealed reattachment or ineffective surgical release. Consequently, in August 2010, Plaintiff underwent chemodenervation of the extremities and trunk bilaterally, electromyogram for chemodenervation, and intraoperative ultrasound. The procedure was reportedly successful. (AR 217-218.)

In February 2013, Sarah L. Maze, M.D., conducted a consultative neurological examination of Plaintiff. Plaintiff denied weakness and reported that he exercised daily, walked for about forty minutes, and was able to perform pushups. Plaintiff denied any difficulties with his memory. Examination revealed that Plaintiff's intelligence was in the normal to above average range, his recall was intact, his attention and concentration were not reduced, and his immediate, remote, and recent memory were good. Plaintiff had normal grip and motor strength, normal reflexes and coordination; could ambulate independently; and had no swelling in his

extremities. Dr. Maze diagnosed Plaintiff with chronic pain syndrome. Dr. Maze opined that Plaintiff could perform work at the light exertional level with no additional limitations. (AR 228-231.)

In July 2014, Celeste D. Emont, M.D., completed a consultative medical examination of Plaintiff. Dr. Emont noted that Plaintiff reported that he was able to walk two to three blocks, vacuum, wash dishes, and shop for groceries. He stated that his pain was relieved with muscle relaxant which also helped him sleep. Examination revealed no tenderness to palpation or muscle spasm of Plaintiff's spine; a normal range of motion in his lumbar and cervical spine as well as his upper and lower extremities; no joint deformities, tenderness to palpation, or swelling in either his upper or lower extremities; walked with a normal gait; and was able to get on and off the examining table without difficulty; and had normal motor strength, sensory, and reflexes. Dr. Emont diagnosed Plaintiff with a lumbar strain, recommended a psychiatric evaluation, and opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently; can stand and walk for six hours in an eight-hour workday; can sit for six hours in an eight-hour workday, and no additional limitations. (AR 253-259.)

The ALJ noted that from July to November 2014, Plaintiff was treated with physical therapy. The physical therapy records indicate that Plaintiff could benefit from pain management and psychiatric treatment. (AR 324-354.)

In November 2014, Plaintiff underwent a hemocyte autograft procedure to treat his pelvic myalgia and tendinopathy. The treatment notes indicate that the procedure followed unsuccessful conservative treatments of physical therapy, analgesics, and anti-inflammatory agents. The notes further indicate that the procedure was successful, without complication, and that Plaintiff experienced pain relief. (AR 291.)

In September and October 2015, Plaintiff sought treatment for complaints of pain and tenderness in his ankles, knees, thoracic and lumbar spine, and sacroiliac

joint. Imaging revealed inflammatory arthritis. Plaintiff was prescribed Clonazepam, Tizanidine, and Kenalog. (AR 312-323.)

With regard to Plaintiff's mental health, the ALJ noted the medical evidence of a history of depression and anxiety, reportedly related to his chronic pain. In particular, the ALJ took note that Plaintiff participated in counseling sessions with Peter Weingold, M.D., from October 2008 through April 2012. (AR 296-308.)

In February 2013, Jeriel Lorca, M.D., performed a consultative psychiatric examination. Plaintiff reported that he treated his condition with medications and stated that the most helpful medication for both physical and psychological issues was Milnacipran. According to the mental status examination, Plaintiff's thought process was coherent and organized, but his mood was depressed and his affect was constricted with a mild level of anxiety. Plaintiff made good eye contact, but poor interpersonal contact with the interviewer. He was able to sit still throughout the interview. Dr. Lorca diagnosed Plaintiff with depression. He opined that Plaintiff's condition would likely improve within 12 months. In Dr. Lorca's opinion, Plaintiff is not limited in his ability to perform simple, repetitive tasks; to perform detailed and complex tasks; to maintain regular work attendance; to perform work activities on a consistent basis; to perform work activities without additional or special supervision; or to accept instructions from supervisors. Plaintiff is only mildly limited in his ability to complete a normal workday without interruption from his psychiatric condition, his ability to interact with coworkers and the public, and his ability to handle normal work-related stress. (AR 219-224.)

A second psychiatric examination by Edward R. Ritvo, M.D., in July 2014 revealed similar results. Plaintiff's mental status examination revealed his thought process coherent and organized; intellectual function was normal; and concentration, calculation, and memory were intact. Dr. Ritvo diagnosed Plaintiff with mood disorder secondary to his medical conditions. Dr. Ritvo opined that Plaintiff was at most, mildly impaired in his ability to function mentally. (AR 264-269.)

So long as it is not the only reason for doing so, an ALJ permissibly may rely on a lack of objective medical evidence to discount a claimant's allegations of disabling pain or symptoms. *See Burch v. Barnhart*, 400 F.3d 676, 681 (2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his [or her] credibility analysis."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (same); *see also* SSR 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016) ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities ...").

The ALJ's conclusion that Plaintiff's allegations of disabling pain and symptoms were inconsistent with the objective medical evidence is supported by substantial evidence. With regard to Plaintiff's physical impairments, the ALJ noted the objective evidence that Plaintiff underwent surgical procedures, the last of which was reportedly successful; he participated in physical therapy; and he was diagnosed with inflammatory arthritis. Considering the foregoing objective medical evidence, the ALJ limited Plaintiff to light work. The ALJ reasonably could conclude that the objective evidence was inconsistent with Plaintiff's allegations that he was disabled due to an inability to sit, stand, or walk for more than a few minutes. With regard to Plaintiff's mental impairments, the ALJ properly noted that the record did not include any objective evidence of any significant mental limitation. Although Plaintiff argues that the medical evidence actually supports his subjective complaints because it shows he suffers from chronic pain syndrome and "mental and emotional difficulties" (ECF No. 21 at 7), the Court may not second guess the ALJ's reasonable determination to the contrary. *See Saavedra v. Berryhill*, 2019 WL 1171271, at *4 (C.D. Cal. Mar. 12, 2019) ("Although plaintiff argues that the medical evidence actually supports his subjective complaints …, again the Court may not second guess the ALJ's reasonable determination to the contrary, even if the evidence could give

rise to inferences more favorable to plaintiff.") (citing *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012). Accordingly, the ALJ was entitled to rely upon it in assessing the credibility of those allegations.

In addition, the ALJ found Plaintiff's testimony regarding his symptoms and limitations was inconsistent with other statements in the record. (AR 30.) Specifically, the ALJ pointed out that during his consultative neurological examination, Plaintiff reported that he did not have any weakness, exercised daily, walked for 40 minutes, and was able to do pushups. He further reported having no difficulty with memory or coordination. Yet, at the hearing, Plaintiff testified that he was unable to walk for more than a few minutes or two blocks and had been unable to ride a bike for four years. (AR 30.) The ALJ further noted Plaintiff's testimony that his symptoms rendered him unable to drive, but his medical records include a statement from Dr. Sampler stating that Plaintiff had no ongoing condition that would interfere with safe driving. (AR 30, citing AR 251.) Finally, the ALJ noted Dr. Lorca's notes reflecting that Plaintiff "was able to sit in his seat comfortably throughout the interview despite him stating that it is difficult for him to stay seated for a lengthy amount of time." (AR 30, citing AR 223.) The ALJ could properly rely on these inconsistencies to impugn the accuracy of Plaintiff's testimony and statements. *See Burch*, 400 F.3d at 680 ("In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering ... inconsistencies in claimant's testimony"); *see generally Carmickle v. Comm'r*, *Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

In addition, the ALJ noted that although Plaintiff reported pain in his feet, and his physician recommended an MRI, Plaintiff refused additional objective testing to determine the cause. The ALJ concluded that this undermined Plaintiff's assertion that his symptoms are as severe as he alleges. (AR 30, citing AR 316.) The ALJ could properly rely upon Plaintiff's failure to pursue treatment as a reason to discount the credibility of his subjective complaints. *See Chaudhry*, 688 F.3d at 672 ("[I]f a

claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified....") (citation omitted); *Molina*, 674 F.3d at 1113 (ALJ may properly consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" when evaluating claimant's subjective complaints) (citations and internal quotation marks omitted); SSR 16-3p, 2016 WL 1119029, at *7-*8 (ALJ may give less weight to subjective statements where "the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms....").

Finally, the ALJ observed that Plaintiff was able to sit through the entire hearing without apparent discomfort. (AR 29.) Although the ALJ could not base her credibility solely on her own observations of Plaintiff during the hearing, she could permissibly rely on observations of Plaintiff's demeanor and conduct during the hearing, when assessing his credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Diaz v. Berryhill*, 2017 WL 6028492, at *2 (C.D. Cal. Dec. 5, 2017). Here, the ALJ permissibly relied upon her observation that Plaintiff was able to sit through the hearing as one reason for discounting Plaintiff's credibility. *See Lansford v. Astrue*, 319 F. App'x 627, 628 (9th Cir. 2009) (ALJ properly relied on "observation that Lansford was able to sit for 25 minutes during the administrative hearing despite testifying that she was incapable of sitting for longer than 15 minutes" as a basis for rejecting the claimant's testimony). Furthermore, even if the ALJ erred in relying on her observations, any error was harmless in light of the remaining legally sufficient reasons supporting her credibility determination. *See Molina*, 674 F.3d at 1115; *Carmickle*, 533 F.3d at 1162-1163.

///

///

///

Based upon the foregoing, the Court concludes that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's testimony and statements.[4]

**2. Whether the ALJ erred in assessing Plaintiff's RFC**

Plaintiff contends that the ALJ improperly determined Plaintiff's RFC. (ECF No. 21 at 9-14.)

**a. Relevant Law**

The RFC is the most a claimant can still do despite his or her limitations. *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996) (citing 20 C.F.R. § 404.1545(a)). In determining a claimant's RFC, an ALJ must consider all relevant evidence of record, including medical opinions. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The ALJ must "explain in [his or her] decision the weight given to ... [the] opinions from treating sources, nontreating sources, and other nonexamining sources." 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii). In making an RFC determination, the ALJ may consider those limitations for which there is support in the record and need not consider properly rejected evidence or subjective complaints. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. *See, id.* The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194,

---

[4] As part of his challenge to the ALJ's credibility determination, Plaintiff includes a discussion regarding the ALJ's duty to consider the combined effects of physical and mental impairments in determining whether the claimant's impairments meet or equal a Listing. (ECF No. 21 at 7-8.) Plaintiff then includes the legal standard applicable to considering the opinion of a treating physician. (ECF No. 21 at 8-9.) Plaintiff concludes that the ALJ erred by finding that "Claimant could perform Sedentary Work and therefore his past work as a salesman." (ECF No. 21 at 9.) The ALJ, however, did not make such a finding. It appears that the foregoing are boilerplate language and intended to be included in a different case. The Court declines to address these assertions.

1198 (9th Cir. 2008) (citation and internal quotation marks omitted).

**b. Analysis**

The bulk of Plaintiff's argument on this issue consists of a general discussion of law and a summary of evidence. (ECF No. 21 at 9-14.) Plaintiff's only specific claim of error related to the ALJ's RFC determination is his contention that the ALJ erroneously failed to include a limitation based upon Plaintiff's inability to maintain a work schedule without frequent, unscheduled breaks or absences. (ECF No. 21 at 14.) Accordingly, the Court limits its discussion to the ALJ's evaluation of the evidence relevant to this alleged limitation.

In assessing Plaintiff's RFC, the ALJ discussed all of the medical evidence, including the medical opinions. As set forth above, the ALJ noted Plaintiff's history of depression and anxiety as reflected in the treatment notes from Plaintiff's counseling sessions with Dr. Weingold. (AR 27.)

The ALJ discussed the reports of the psychiatric consultative examiners. As set forth above, Dr. Lorca opined that Plaintiff is only mildly limited in his ability to complete a normal workday without interruption from his psychiatric condition, his ability to interact with coworkers and the public, and his ability to handle normal work-related stress and otherwise not limited by his mental condition. (AR 219-224.) Similarly, Dr. Ritvo, the other psychiatric consultative examiner, opined that Plaintiff is only mildly impaired in his mental functional capacity. (AR 264-269.)

The ALJ afforded the opinions of Drs. Lorca and Ritvo "some weight." The ALJ concluded that the evidence indicated that Plaintiff experienced anxiety and depression largely in relation to his chronic pain and its affects. Considering Plaintiff's physical and mental impairments in combination, the ALJ concluded that Plaintiff suffered "slightly more than mild limitations in concentration, memory, and his ability to interact with others." (AR 28.)

The ALJ also considered the opinions of the State agency medical consultants. Dr. Henderson opined that Plaintiff had mild limitations in activities of daily living,

moderate limitations in social functioning and moderate limitations in concentration, persistence, and pace. (AR 90-93.) State agency physician, Martha Lauster, M.D., opined that Plaintiff could perform medium exertional work with no other limitations. (AR 89-90.)[5] The ALJ explained that Dr. Lauster neither examined Plaintiff nor based her opinion on the most recent evidence, and the ALJ accorded that opinion little weight. The ALJ afforded Dr. Henderson's opinion great weight explaining that while Dr. Henderson also did not examine Plaintiff, his opinion is consistent with the medical evidence. (AR 28.)

With regard to Dr. Stampler, the ALJ noted that Plaintiff received bi-weekly psychotherapy from Dr. Stampler beginning in December 2010. On January 16, 2014, Dr. Stampler completed a mental residual functional capacity assessment. Dr. Stampler diagnosed Plaintiff with major depressive disorder, pain disorder, anxiety disorder, attention deficient disorder, and chronic neuropathic pain due to bilateral sciatic nerve injury. (AR 237.) Dr. Stampler opined that Plaintiff is permanently disabled. More specifically, Dr. Stampler opined that Plaintiff has moderate to extreme limitations in all areas of mental functioning, and those limitations would substantially interfere with his ability to work on a regular schedule without several absences per month. (AR 237-240.)

Before rejecting the uncontradicted opinion of a treating or examining physician, an ALJ must provide clear and convincing reasons for doing so. *Hill v. Astrue*, 698 F.3d 1153, 1159-1160 (9th Cir. 2012); *Carmickle*, 533 F.3d at 1164. "Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Hill,* 698 F.3d at 1160 (quoting *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298-1299 (9th Cir. 1999)). An ALJ meets the requisite specific and legitimate standard "by setting out a detailed and thorough

---

[5] While Dr. Henderson addressed Plaintiff's mental impairments, Dr. Lauster addressed only Plaintiff's physical impairments.

summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (citations and internal quotation marks omitted). Because Dr. Stampler's opinion was contradicted by the opinions of the two psychiatric consultative examiners and the State agency physicians, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence before rejecting it.

The ALJ gave Dr. Stampler's opinion limited weight based upon her conclusion that it was inconsistent with the medical evidence. In reaching that conclusion, the ALJ noted evidence indicating that Plaintiff had normal to above average intelligence and that he performed well in a memory assessment. (AR 29, citing AR 219, 229, 267.) The ALJ's characterization of the medical record is supported by substantial evidence. Objective findings from Plaintiff's neurological examination revealed normal to above average intelligence, recall was intact, immediate, remote, and recent memory were good, and attention and concentration were not reduced. (AR 228-229.) In his February 2013 psychiatric consultative examination, Plaintiff stated that his memory was okay, and the mental status examination confirmed that his memory and concentration were intact. (AR 219-222.) Likewise, the July 2014 psychiatric consultative examination found both his memory and concentration to be intact. (AR 267.) Based on this, the ALJ could permissibly reject Dr. Stampler's opinion as inconsistent with other evidence in the record. *See Tommasetti*, 533 F.3d at 1040-1042 (concluding that the ALJ may properly reject a treating physician opinion that is inconsistent with other medical records); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole ... or by objective medical findings").[6] In sum,

---

[6] The Commissioner notes that the ALJ also observed that Plaintiff participated in the hearing with no apparent mental limitations. (ECF No. 29 at 9.) To the extent that the ALJ intended to reject Dr. Stampler's opinion based upon her own observations of Plaintiff's mental functioning during the hearing, she may have committed error. *See Tobias v. Colvin*, 2014 WL 2448916, at *5 (C.D.

the ALJ properly considered all relevant evidence of record, including medical opinions, and provided specific and legitimate reasons for rejecting Dr. Stampler's opinion. Consequently, the ALJ was not required to include Dr. Stampler's opinion that Plaintiff was unable to maintain a regular work schedule in her assessment of Plaintiff's RFC.

**3. Whether the ALJ erred by concluding that Plaintiff could perform a significant number of jobs in the national economy.**

At Step Five of the sequential process, the Commissioner bears the burden of showing that, given the claimant's RFC, he can engage in other substantial gainful work existing in significant numbers in the national economy. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). Where a claimant has significant non-exertional impairments, the ALJ appropriately relies upon the testimony of a VE to make such a determination. The VE must identify jobs in the national economy with physical and mental requirements that fall within the claimant's RFC. *Osenbrock*, 240 F.3d at 1162-1163.

In the present case, the ALJ proposed a hypothetical question including all of the limitations in Plaintiff's RFC. The VE testified that an individual with Plaintiff's age, education, work experience and RFC could not perform his past relevant work. However, such a hypothetical claimant could perform the jobs of basket filler (DOT 529.687-010), garment bagger (DOT 920.687-018), and laundry worker (DOT 302.685-010). (AR 73-75.)

Plaintiff first contends that the ALJ erred in this conclusion because when the limitations of being off task 20% of the time, being unable to work on a schedule, and being absent several times a month were added to the hypothetical question, the VE testified that there were no jobs such a claimant could perform. (ECF No. 21 at 15; *see* AR 75.) In addition, Plaintiff contends that the ALJ improperly relied upon

---

Cal. May 30, 2014). However, because the Court finds the ALJ provided legally sufficient reasons discussed above, any error was harmless.

the VE's testimony to hypothetical questions that did not include Plaintiff's subjective complaints. As discussed above, however, the ALJ's RFC properly rejected both Dr. Stampler's opinion and Plaintiff's subjective complaints. Therefore, the ALJ was not required to include those in her hypothetical question to the VE.

Next, Plaintiff argues that the ALJ found Plaintiff had moderate difficulties with regard to concentration, persistence or pace, but this finding was not included in the ALJ's hypothetical question. Plaintiff contends that the ALJ's limitation to simple, repetitive work does not reflect the foregoing limitation. (ECF No. 21 at 15.)

The Ninth Circuit has held that an ALJ may sufficiently account for moderate difficulties in concentration, persistence, and pace by assessing an RFC restricting the claimant to simple, routine, repetitive tasks, so long as that assessment is consistent with restrictions identified in the medical evidence. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *see also Turner v. Berryhill*, 705 F. App'x 495, 498 (9th Cir. 2017) (reaffirming *Stubbs-Danielson*; *Hughes v. Colvin*, 599 F. App'x 765, 766 (9th Cir. 2015) (same); *Israel v. Astrue*, 494 F. App'x 794 (9th Cir. 2012) (same); *Sabin v. Astrue*, 337 F. App'x 617 (9th Cir. 2009) (same).[7] This is what the ALJ did here. The ALJ specifically adopted the opinion of Dr. Henderson, the State agency physician who opined that Plaintiff had moderate difficulties maintaining concentration, persistence, and pace. Dr. Henderson concluded that notwithstanding Plaintiff's moderate mental limitations, he was still

---

[7] The Court is aware that in an unpublished case, the Ninth Circuit found that the ALJ erred by limiting a claimant to simple, repetitive, or unskilled work after finding the claimant has moderate limitation in maintaining concentration, persistence, or pace. *Brink v. Comm'r of Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. Aug. 18, 2009). Recent unpublished Ninth Circuit decisions, however, do not cite *Brink*, but rather reaffirm *Stubbs-Danielson*. Furthermore, *Brink* (and most of the cases following it) are distinguishable from this one because, as discussed above, the ALJ relied upon a medical opinion that Plaintiff could perform simple, repetitive work. *See, e.g., Banks v. Colvin*, 2017 WL 113055, at *4 (C.D. Cal. Jan. 11, 2017). Thus, the Court concludes that *Stubbs-Danielson* governs this case. *See Jack Tu v. Berryhill,* 2018 WL 5778237, at *5 (C.D. Cal. Nov. 1, 2018) (declining to follow *Brink*, explaining in part that "recent unpublished Ninth Circuit cases have not cited *Brink* and rely instead on *Stubbs-Danielson* to find that 'simple task' hypotheticals can encompass concentration, persistence, and pace limitations.").

able to perform unskilled work – namely, work involving tasks that are "learned and performed by rote." (AR 90-92.) Plaintiff points to no other medical opinion evidence, other than that which was permissibly rejected, suggesting that his moderate difficulties maintaining concentration, persistence, and pace would render him unable to perform simple, repetitive work. Accordingly, the Court concludes that the ALJ properly translated Plaintiff's moderate difficulties in concentration, persistence, and pace into a limitation to simple, routine and repetitive tasks. *See Valerie C. v. Berryhill,* 2019 WL 450675, at *5 (C.D. Cal. Feb. 5, 2019); *Hamasyan v. Berryhill,* 2018 WL 6025596, at *4 (C.D. Cal. Nov. 16, 2018); *Walsh v. Berryhill*, 2017 WL 7859362, at *5 (C.D. Cal. Nov. 29, 2017). It follows that the ALJ's hypothetical to the VE appropriately accounted for all Plaintiff's limitations, and therefore, the ALJ was entitled to rely upon the VE's testimony.

**ORDER**

For the foregoing reasons, IT IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 4/18/2019

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE